IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANTHONY W. SARGENT,

        Plaintiff,

    v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

        Defendant.

Case No. 3:12-cv-01905-AA
OPINION AND ORDER

Alan Stuart Graf
Alan Stuart Graf P.C.
208 Pine St.
Floyd, Virginia 24091
    Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Jordan D. Goddard
Social Security Administration
Office of General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

AIKEN, Chief Judge:

Page 1 - OPINION AND ORDER

Plaintiff Anthony Sargent brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On June 28, 2007, plaintiff applied for SSI and DIB. Tr. 136-43. Both applications were denied initially and upon reconsideration. Tr. 99-100. Plaintiff timely requested a hearing before an administrative law judge ("ALJ"). Tr. 106-07. On March 24, 2010, an ALJ hearing was held before the Honorable John Madden Jr.; plaintiff was represented by counsel and testified therein, as did Nancy Bloom, a vocational expert. Tr. 36-78. On March 26, 2010, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 19-34. After the Appeals Council declined review, plaintiff filed a complaint in this Court. Tr. 1-6.

## STATEMENT OF FACTS

Plaintiff was born on December 20, 1958; he was 47 years old on the alleged outset of the disability and 51 years old on the date of the hearing. Tr. 29, 41. After completing the tenth grade, plaintiff dropped out of high school and has not obtained a

Page 2 - OPINION AND ORDER

GED. Tr. 41. Plaintiff previously worked as a food deliverer, motel cleaner, apartment maintainer, store laborer, busser, kitchen worker, packager, and bartender. Tr. 69-70. Plaintiff alleges that he became disabled on August 27, 2006 due to chronic pulmonary insufficiency. Tr. 136.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled. If he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. Yuckert, 482 U.S. at 141-42; 20

Page 4 - OPINION AND ORDER

C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 24. At step two, the ALJ determined that plaintiff has the following severe impairments: chronic obstructive pulmonary disease ("COPD"), sleep disorder secondary to smoking, and history of poly-substance abuse in remission. Id. At step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment. Id.

Because plaintiff did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that the claimant can occasionally climb ramps and stairs and can never climb ladders, ropes, or scaffolds, must be able to sit or stand at will, and must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc." Tr. 26. At step four, the ALJ found that plaintiff had no past relevant work. Tr. 29. At step five, the ALJ determined that jobs existed in significant numbers

in the national and local economy that plaintiff could perform despite his impairments, such as small products assembler, electronics worker, and office helper. Tr. 30. Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. Id.

## DISCUSSION

Plaintiff alleges that the ALJ erred by: (1) finding that his COPD did not meet listing 3.02A; (2) finding him not credible; and (3) improperly assessing the opinion of his treating physician.

I.  Listing 3.02A

Plaintiff contends that the ALJ erred by finding that his COPD did not meet or equal listing 3.02A. Listing 3.00A states that "listings in this section describe impairments resulting from respiratory disorders based on symptoms, physical signs, laboratory test abnormalities, and response to a regimen of treatment prescribed by a treating source." 20 C.F.R. § 404 app. 1, § 3.00A. Listing 3.02A, for chronic pulmonary insufficiency, provides a table for interpreting the results of spirometry tests to determine whether a person is disabled.

Specifically, the table articulates forced expiratory volumes ("FEV") that correspond to the claimant's height without shoes. 20 C.F.R. § 404 app. 1, § 3.02A. If the claimants's FEV is below the level corresponding to their height, the person is considered disabled. 20 C.F.R. § 404 app. 1, § 3.00E. If, after initial

Page 6 - OPINION AND ORDER

testing, the claimant's FEV is below 70% of the predicated normal value, the claimant must use a bronchodilator, unless contraindicated, and then repeat the test. Id.

On September 28, 2007, plaintiff took a spirometry test. Tr. 256. His pre-bronchodilator FEV was 1.21 and his post-bronchodilator FEV was 1.51. Id. Where, as here, a claimant is sixty-seven inches tall, listing 3.02A specifies that a FEV of equal to or less than 1.35 is considered disabled. 20 C.F.R. § 404 app. 1, § 3.02A. Thus, plaintiff's argument regarding this listing presumes that his pre-bronchodilator FEV is the dispositive value. Plaintiff misinterprets requirements of listing 3.02A.

Under the plain language of this listing, disability determinations are made by looking at the highest FEV value, including those obtained after a bronchodilator: "the highest values of the FEV . . . should be used to assess the severity of the respiratory impairment." 20 C.F.R. § 404 app. 1, § 3.00E. Accordingly, cases interpreting and/or applying this listing hold that, where post-bronchodilator FEV values exceed the level corresponding to the claimant's height, the claimant is not presumptively disabled. See Roberts v. Astrue, 2011 WL 3501863, *2 (C.D.Cal. Aug. 9, 2011) (claimant's post-medication FEV exceeded the maximum value for her height to meet listing 3.02A, such that she was not presumptively disabled); see also Eskew v. Astrue, 462 Fed.Appx. 613, 615 (7th Cir. 2011) (listing 3.02A requires the ALJ

Page 7 - OPINION AND ORDER

to use the highest value FEV to assess the severity of the respiratory impairment).[1]

Therefore, because plaintiff's post-bronchodilator FEV of 1.51 is above the level that qualifies as disabling under listing 3.02A, the ALJ did not err in neglecting to resolve step three in plaintiff's favor. In other words, the ALJ correctly relied on the higher post-bronchodilator FEV in determining that plaintiff does not meet or equal the listing criteria. Accordingly, the ALJ's decision is affirmed as to this issue.

II. Plaintiff's Credibility

Plaintiff next asserts the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, to reject his subjective symptom statements concerning the extent and severity of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation

---

[1] The parties have not cited to, and the Court is not aware of, any Ninth Circuit authority addressing this precise issue. Nonetheless, the plain language of listing 3.02A is consistent with the well established rule that "impairments that can be controlled effectively with medication are not disabling." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

Page 8 - OPINION AND ORDER

omitted). A general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If, however, the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that, when doing any type of physical activity, he has to stop and take a break because he cannot breath. Tr. 54. He stated that he cannot even walk up to the mailbox without stopping and taking a break for five to ten minutes. Tr. 54, 57. Additionally, plaintiff remarked that he can only sit for half an hour and then he needs to stand up to allow circulation to his legs, but thereafter can only stand for one hour and needs to move around; he cannot stand still. Tr. 55-56. Plaintiff also testified that any type of gas, paint, or aerosol makes it difficult for him to breath and causes him to start gaging. Tr. 54-55.

After discussing the evidence of record and plaintiff's testimony, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the

Page 9 - OPINION AND ORDER

symptoms, but his statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible. Tr. 26. The ALJ cited many reasons for discrediting plaintiff, including: his professed but disproved cardiac condition; discrepancies between his self-reported symptoms and the evidence of record; his inconsistent statements at the hearing; his failure to seek treatment for his mental health issues; and his diverse daily activities.[2]

First, as the ALJ noted, plaintiff alleged that he has a cardiac condition, but he had a normal cardiac stress test in 2007 and, at that time, no further cardiac work up was warranted. Tr. 27, 58, 237. In May 2009, when plaintiff visited Jennifer McClendon, M.D., to have his oxygen level taken, he had no shortness of breath, no wheezing, and no cough during his exam. Tr. 322. The ALJ also considered plaintiff's January 2010 sleep study, which concluded that plaintiff's overnight oximetry trend study results were out of proportion to his symptoms. Tr. 343.

Additionally, the ALJ discounted plaintiff's credibility because he made numerous inconsistent statements. Inconsistencies in a claimant's testimony can serve as a clear and convincing

---

[2] Plaintiff asserts that "the ALJ selected medical records that supported his rationale, but ignored records that did not." Pl.'s Opening Br. 12. In support of this assertion, plaintiff cites to several medical records that he claims the ALJ ignored; however, with the exception of the spirometry test results discussed above, all of the medical records that plaintiff cites to are recitations of his subjective complaints rather than objective medical evidence. Id. at 12-13.

Page 10 - OPINION AND ORDER

reason for discrediting it. <u>Burch v. Barnhart</u>, 400 F.3d 676, 680 (9th Cir. 2005). Plaintiff testified at the hearing that he smokes "a little bit," but upon further questioning, he admitted smoking one pack of cigarettes per day. Tr. 28, 46. Moreover, in his January 2010 visit to the sleep specialist, plaintiff reported that he regularly used methamphetamine from 2000 to 2004. Tr. 28, 342. Yet at the hearing, plaintiff testified that the last time he used methamphetamine was "about 10 - 20 years ago. About 20 years ago." Tr. 45.

The ALJ also found that plaintiff's failure to seek treatment undermined his credibility. Tr. 28. Plaintiff reported having depression and anxiety, but did not seek any mental health counseling because he allegedly could not afford it, despite being on the Oregon Health Plan. Tr. 65. Failure to seek medical treatment is a clear and convincing reason to reject a claimant's subjective statements. <u>Burch</u>, 400 F.3d at 861. Nevertheless, before drawing a negative inference from a claimant's failure to seek treatment, the ALJ must consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits." SSR 96-7p, <u>available at</u> 1996 WL 374186.

Here, the record supports the ALJ's conclusion. Plaintiff admitted that he had not looked into whether his health plan or the county would cover mental health services. Tr. 65. Furthermore, in 2008, plaintiff went to the Marion County Health Department for

Page 11 - OPINION AND ORDER

a mental health consultation and received a referral to mental health services. Tr. 358. The record is devoid of any evidence that plaintiff followed up on this referral and his testimony at the hearing indicates that he never sought any further treatment. Tr. 65.

Finally, the ALJ found plaintiff's daily activities contradicted his hearing testimony and indicated the ability to perform a limited range of light work. Conflicts between a claimant's everyday activities and his subjective symptom testimony is a clear and convincing reason to reject that testimony. Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Plaintiff reported that his daily activities include watching TV, going shopping, babysitting his fiancée's three children, and taking small walks. Tr. 51-52, 184. Plaintiff's fiancée noted that he mows the yard for an hour and a half to two hours at a time and does light house work. Tr. 170. These activities belie plaintiff's assertion that his impairments render him completely disabled.

Thus, the ALJ provided clear and convincing reasons, supported by substantial evidence, for discrediting plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms. The ALJ's credibility finding is affirmed.

III. Treating Physician's Opinion

Lastly, plaintiff contends that the ALJ failed to provide a legally sufficient reason to reject the opinion of his treating

Page 12 - OPINION AND ORDER

physician, Dr. Raymond Baculi, M.D. There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In considering medical evidence, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). More weight is afforded to "opinions that are explained than to those that are not, . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." Id. (citations omitted). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing Lester, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

Plaintiff began treatment with Dr. Baculi in 2006 and was still seeing him at the time of the hearing. Tr. 50, 282. Dr. Bacuali saw plaintiff approximately three to four times per year, and occasionally performed objective physical examinations, which yielded largely normal results. Tr. 277-79, 282, 319, 322, 324, 326, 328, 330, 332, 354.

In addition to his chart notes, Dr. Baculi submitted several check-the-box forms prepared by plaintiff's attorney.

Page 13 - OPINION AND ORDER

Specifically, in 2008, he submitted a check-the-box form wherein he opined that plaintiff's prognosis was fair, but, among other limitations, he would need unscheduled breaks every thirty minutes and he would be absent from work more than three times per month. Tr. 312-16. In 2009, Dr. Baculi submitted a letter stating that plaintiff's COPD and emphysema cause him to have significant difficulties in performing employment duties. Tr. 317. In 2010, Dr. Baculi submitted another check-the-box form, in which he again asserted that plaintiff would be absent more than three times per month and would need frequent rest breaks. Tr. 345.

The ALJ gave Dr. Baculi's assessments limited weight because "no objective evidence in the record indicat[es] that the claimant's breathing difficulties would cause him to be absent from work more than 3 days per month." Tr. 27. In rejecting Dr. Baculi's assessments, the ALJ also relied on the results of plaintiff's spirometry test, history of conservative treatment, and diverse daily activities. Id.

It is well-established than an ALJ may afford less weight, even where a treating physician is involved, to opinions that are not accompanied by explanations or references to clinical findings. See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions"); see also Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) ("the ALJ need not accept the opinion of any physician including a treating

Page 14 - OPINION AND ORDER

physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings") (citation and internal quotations omitted).

Here, Dr. Baculi's opinion is brief, conclusory, and, as the ALJ noted, does not reference any object findings. Tr. 312-17; 345-50. Further, Dr. Baculi's opinion is inconsistent with the record and not supported by the doctor's own chart notes. Notably, as discussed above, the record indicates that plaintiff was capable of watching TV, going shopping, babysitting his fiancée's three children, taking small walks, mowing the lawn, and performing housework. Tr. 51-52, 170, 184. Moreover, the doctor's chart notes reveal that plaintiff was not significantly limited by his respiratory conditions. See Tr. 277-79, 282, 319, 322, 324, 326, 328, 330, 332, 354.

Additionally, other physicians' opinions support the conclusion that plaintiff's impairments are less debilitating than Dr. Baculi's opinion indicates. Dr. McClendon reported no shortness of breath, no wheezing, and no cough upon examination of plaintiff. Tr. 322. The consulting-source evidence "assessed a light work capacity with occasional climbing ramps and stairs and no climbing ladders, ropes, or scaffolds." Tr. 28, 261-68. The ALJ's rejection of Dr. Baculi's opinion is affirmed.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is

Page 15 - OPINION AND ORDER

DISMISSED.

IT IS SO ORDERED.

Dated this 23 day of February 2014.

_____
Ann Aiken
United States District Judge